**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   Case No.: 2:07cr12-MEF |
| | ) |
| GREGORY LEWIS DAVIS | ) |

## CORRECTED MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

**COMES NOW** the defendant, **GREGORY LEWIS DAVIS**, by undersigned counsel and pursuant to Rule 12 of the Federal Rules of Criminal Procedure, and respectfully moves this Court to suppress the gun seized from Mr. Davis and all statements obtained as a result of a police stop and search of Mr. Davis on November 22, 2006, in Montgomery, Alabama, in the Middle District of Alabama.

As grounds for this motion, Mr. Davis would show that such search and seizure violated his right to be free from unreasonable searches and seizures under the Fourth Amendment to the U.S. Constitution, and that all statements Mr. Davis made directly resulted from the unlawful search and seizure, and thus violated his right not to incriminate himself, under the Fifth Amendment to the U.S. Constitution.

## ISSUES PRESENTED

1.   Whether Mr. Davis was unlawfully detained, searched and questioned when Lt Caviness, Montgomery Police Department ("MPD"), initiated contact with Mr. Davis on November 22, 2006?

2. If Mr. Davis was unlawfully detained, searched and questioned, whether all evidence obtained as a result of that unlawful detention and questioning should be suppressed?

## **PROPOSED FINDINGS OF FACT**

3. On November 22, 2006, Mr. Davis was a resident of the Motel 6 located on the Eastern Bypass in Montgomery, AL.

4. Also on that date members of the MPD received a tip that unidentified subjects were selling drugs from rooms 133 and 242 of the Motel 6. At approximately 10:55 a.m. MPD officers set up surveillance of the rooms. After they observed no suspicious activity, Detective Hamil placed calls to the rooms. When subjects exited the rooms, officers approached them.

5. Mr. Davis was not one of the subjects that emerged from the rooms under surveillance when Det. Hamil placed calls to the rooms. At about the same time that Det. Hamil placed calls to the rooms, Mr. Davis had just returned to the hotel grounds; he had been riding as a passenger in a van driven by Mr. Randall Chapman, the Motel 6 maintenance man. As Mr. Davis exited the van he saw a car drive through the Motel parking lot and around the building at a high rate of speed. Mr. Davis walked around the building to see what was going on. After walking around the building Mr. Davis observed two police cars on the other side of the building outside room 133. Mr. Davis then returned to the side of the building from where he had come and walked toward his room, room 103.

6.  At this time Lt Caviness initiated contact with Mr. Davis based on Lt Caviness's claim that Mr. Davis was acting suspiciously. Lt Caviness was subsequently joined by Sgt. Drummond of the MPD. Sgt Drummond conducted a pat-down search of Mr. Davis and found a handgun. After Sgt Drummond retrieved the handgun Mr. Davis made several statements concerning his possession of the handgun.

## LAW

7.  The Fourth Amendment to the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. Amend IV. "This inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs. . . . No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Terry v. Ohio*, 392 U.S. 1, 9 (1967). "It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person. . . . It is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly." *Id*. at 16-17.

8.  To evaluate the reasonableness of an investigative stop, the court is required under *Terry* to make a "dual inquiry," examining first "whether the officer's action was

justified at its inception," *United States v. Powell,* 222 F.3d 913 (11th Circ. 2000) (quoting *Terry* at 20), which turns on whether the officers had a reasonable suspicion that the defendant had engaged, or was about to engage, in a crime. *Id.* The second inquiry is whether the investigative stop was "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry* at 20. "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Jackson v. Sauls*, 206 F.3d 1156 (11th Cir 2000) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). "A search or seizure is ordinarily unreasonable in the absence of [at least some] individualized suspicion of wrongdoing." *City of Indianapolis v. Edmond* 531 U.S. 32, 37 (2000). Detention based on an "unparticularized" or "unsupported" hunch violates the Fourth Amendment. *U.S. v. Perkins*, 348 F.3d 965, 972 (11th Cir. 2003); *U.S. v. Pruitt*, 174 F.3d 1215, 1221 (11th Cir. 1999). In assessing the requisite "reasonable suspicion," the court "must look at the 'totality of the circumstances' surrounding each case to see whether the detaining officer has a 'particularized and objective basis' for suspected legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266 (2002).

9.  The exclusionary rule principally serves "to deter future unlawful police conduct." *United States v. Calandra*, 414 U.S. 338, 347 (1974). "[T]he rule is a judicially created remedy designed to safeguard Fourth Amendment rights through its deterrent effect . . . ." *Id.* at 348. Thus, the rule must be applied in light of its deterrent purpose. "Under this rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal

proceeding against the victim of the illegal search and seizure. *Weeks v. United States*, 232 U.S. 383 (1914); *Mapp v. Ohio*, 367 U.S. 643 (1961). This prohibition applies as well to the fruits of the illegally seized evidence. *Wong Sun v. United States*, 371 U.S. 471 (1963). *United States v. Calandra*, 414 U.S. 338 (1974).

## ANALYSIS

10. The only evidence that the police can offer in this case that Mr. Davis was engaged in some kind of criminal activity is their observation–which Mr. Davis disputes–that Mr. Davis was hiding around the corner of the building watching what the police were doing. In other words, Lt Caviness initially made contact with Mr. Davis merely because he was discreetly rubbernecking. That's it. That is hardly enough for an officer to claim that he had a reasonable suspicion that Mr. Davis was engaged in or about to engage in criminal activity, nor does it provide a particularized and objective basis for suspected legal wrongdoing.

Lt Caviness detained Mr. Davis simply based on an unparticularized or unsupported hunch, which violates the Fourth Amendment. The seizure of Mr. Davis and the subsequent search were unlawful, and the evidence recovered from Mr. Davis's person, the gun, should be suppressed.

11. Further, because the initial seizure and search were unlawful, any statements that Mr. Davis about the gun should also be suppressed as fruits of the illegally seized evidence.

12.     Therefore, under the circumstances of this case, the gun seized from Mr. Davis and all the statements that Mr. Davis made, as well any other evidence obtained from or that was the fruit of such seizures, must be suppressed.

**WHEREFORE**, the Defendant respectfully prays that this Motion be granted.

Dated this 15th day of February 2007.

                                      Respectfully submitted,

                                      s/ Donnie W. Bethel
                                      DONNIE W. BETHEL
                                      Assistant Federal Defender
                                      201 Monroe Street, Suite 407
                                      Montgomery, Alabama 36104
                                      Phone: (334) 834-2099
                                      Fax: (334) 834-0353
                                      E-mail:don_bethel@fd.org
                                      IN Bar Code: 14773-49

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.: 2:07cr12-MEF |
| | ) | |
| GREGORY LEWIS DAVIS | ) | |

CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Verne H. Speirs, Esq., Assistant U. S. Attorney, One Court Square, Suite 201, Montgomery, Alabama 36104.

Respectfully submitted,

s/ Donnie W. Bethel
DONNIE W. BETHEL
Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail:don_bethel@fd.org
IN Bar Code: 14773-49