IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                                        ) | CR. NO. 02:07cr12-MEF |
| ) | |
| GREGORY LEWIS DAVIS            ) | |

RESPONSE TO DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE AND STATEMENTS

Comes now the United States of America, by and through Leura Garrett Canary, United States Attorney for the Middle District of Alabama, and hereby requests that this Honorable Court deny Defendant's Motion to Suppress. As grounds in support of this Response, the United States sets forth the following:

FACTS

On November 22, 2006, at approximately 10:00 am, members of the Montgomery Narcotics Bureau received information that somebody was selling drugs from rooms 133 and 242 of the Motel "6," located on the Eastern Boulevard, Montgomery, Alabama.

In response to this information, police officers began watching those rooms for suspicious activity. After observing the scene, officers telephoned the rooms. Upon making the calls, various individuals exited the rooms. Once outside, officers approached the suspects to inquire about reported drug dealing. As Officer Mike Drummond (a member of the Montgomery Narcotics Bureau) was patrolling the scene, he noticed Defendant Davis running around the corner of the building. His suspicion raised, he stopped his car and looked (from inside the car) for Davis. Although Drummond was unable to spot Davis, he received word from Officer Bob Caviness that Davis was hiding and watching events unfold.

His suspicion raised, Officer Caviness approached Davis. As he did, Davis repeatedly moved his hands about his waist and into his coat pockets. Concerned for his safety, Officer Caviness repeatedly ordered Davis to show his hands. Davis failed to comply with numerous commands to show his hands. Indeed, Officer Caviness became so concerned for his own safety, that he drew and leveled his firearm at Davis. Only after Caviness took aim with his firearm did Davis comply with commands.

Once Officer Caviness encountered Davis, Officer Drummond remembered Davis from previous investigations. Both Officers Drummond and Caviness noted that Davis was unusually nervous, sweating and suffering dry mouth. According to the officers, Davis appeared to be scouting a place to run.

Considering the totality of these events, Officer Drummond "frisked" Davis for officer safety. During the frisk, Officer Drummond located a Taurus .40 caliber handgun in Davis' left coat pocket and a full clip of .40 caliber ammunition in his right coat pocket. Davis was arrested.

After his arrest, Davis was verbally advised of his Miranda rights. Davis immediately agreed to cooperate with police. According to Davis, he knowingly possessed the firearm and ammunition and offered to help police buy cocaine from his associates.

## ANALYSIS

In his motion, Davis clearly attacks his *Terry* stop. He also seemingly attacks his subsequent statements to law enforcement. The United States provides this Honorable Court with a discussion of both issues.

### I. *TERRY* STOP

It is acceptable under the Fourth Amendment for the police to stop persons and detain them

briefly in order to investigate a reasonable suspicion that the persons have engaged in or are about to engage in criminal activity. See Terry v. Ohio, 392 U.S. 1 (1968). Under Terry, the key to the stop or brief detention is "reasonable suspicion" on the part of the police officer. "Reasonable suspicion" is more than just a hunch and it requires some objective justification for the investigatory stop. See United States v. Sokolow, 490 U.S. 1 (1989); United States v. Acosta, 363 F.3d 1141 (11th Cir. 2004); See United States v. Dunn, 345 F.3d 1285 (11th Cir. 2003). Indeed the validity of the stop must be considered in view of the totality of the circumstances. None of the suspect's actions need to be criminal on their face, yet taken together they can provide trained police with reasonable suspicion. See United States v. Arvizu, 534 U.S. 266 (2002). Finally, reasonable suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence or even the requirement of probable cause that evidence of a crime will be found. See United States v. Mikel, 102 F.3d 470 (11th Cir. 1996).

In the case at bar, police officers were called to investigate suspected drug dealing at a local motel. Upon arrival, they noticed nothing extraordinary. However, armed with particular information, they identified and telephoned motel rooms thought to harbor drug dealers. Once the calls were made, the reported rooms emptied, and police rightly sought to investigate suspected drug trafficking.

Yet, in the midst of their investigation, officers noticed an individual run and attempt to hide while still furtively observe the police operation. Once spotted, the same individual repeatedly failed to heed police commands. His failure to heed commands was so concerning, police convinced him at gunpoint. The suspect appeared nervous, and seemed to scout opportunities to flee the scene.

Indeed, one officer recognized him from previous arrests. During a frisk, police locate a firearm and ammunition.

In 2004, the Sixth Circuit upheld a *Terry* stop on strikingly similar facts. In United States v. Mayo, (6th Cir. 2004), Richmond Virginia police officers were patrolling a high crime area when they saw Mayo standing in the middle of the street talking to another person. See Mayo at 803. When Mayo saw the police, he "put his left hand into his left hand jacket pocket, turned 180 degrees, walked out of the street and into the [apartment] complex property that is posted no trespassing and through that property between two buildings." See id. While watching Mayo, the officers noticed something heavy in his pocket, or suspected he was pushing his hand down into his pocket to perhaps conceal or control a firearm. See id. Officers followed Mayo around the building. When Mayo saw them he "immediately stopped, just froze in his tracks for a split second, then started walking along the side of the building." See id. at 804.

Based upon these observations, officers stopped Mayo. Before frisking him, they noticed that his "eyes were extremely wide, his mouth was slightly agape, and it was almost like nothing registered with him. It was almost like he was in shock." See id. Upon asking Mayo if he had any weapons, he averted his eyes, looked downward and said nothing. See id. At this point, Officers frisked Mayo and recovered a semi-automatic handgun from his left pocket.

In the District Court, Mayo sought to suppress the firearm. Indeed, Mayo successfully argued that the officers lacked the "reasonable suspicion" required by Terry v. Ohio, 392 U.S. 1 (1968). Nevertheless, on appeal, the Sixth Circuit overturned the District Court and upheld the *Terry* stop. In upholding the stop, the Sixth Circuit focused on four factors. First, Mayo was encountered in a high-crime area. Second, upon seeing the police Mayo put his hands into his pockets in a manner

that suggested he might have a weapon. Third, Mayo sought to evade police scrutiny when he turned and walked away from them. Finally, when confronted by police, Mayo was unusually nervous. See Mayo at 807-808.

Applying the Sixth Circuit's analysis to the case at bar, Davis' *Terry* stop is easily upheld. First, Montgomery narcotics officers were called to a specific location to investigate drug trafficking. Rather than just patrolling a high-crime area, Montgomery officers received information about suspected drug trafficking at a specific motel - including specific rooms. It is axiomatic that firearms are tools of the drug trafficking trade. Considering the nature of the investigation, any reasonable police officer would be concerned about the possibility of armed suspects.

Second, both Officer Drummond and Officer Caviness noticed that Davis tried to evade them while still observing the police operation. Like Mayo, Davis was trying to evade police scrutiny; yet, more compelling than Mayo, Davis also tried to surreptitiously observe them. During drug investigations, police are naturally concerned about individuals hiding or evading their detection. Escalating their concern however, is the individual who seeks to evade detection while lingering at the scene.

Third, Davis repeatedly failed to heed orders to remove his hands away from his pockets. Like Mayo, ignoring police orders to show hands (especially during a drug investigation) suggests an armed suspect.

Finally, once officers encountered Davis, he was nervous and appeared to be scouting a place to run. According to settled law, flight can be considered consciousness of guilt.[1]

---

[1] See 1 L. Sand, *et al.*, Modern Federal Jury Instructions, 2002
**Consciousness of Guilt From Evidence of Flight**
If proved, the flight of a defendant after he knows he is to be accused of a crime may tend

Under the totality of the circumstances, Montgomery police officers had abundant reasonable suspicion to stop Davis and frisk him for their safety. Applying Mayo's facts and the Sixth Circuit's analysis, Davis' constitutional attack fails. This Honorable Court should follow the Sixth Circuit's analysis and uphold evidence seized from Davis.

## II.    STATEMENTS

Rather than provide this Honorable Court with any legal analysis, Davis provides a perfunctory one sentence argument seeking to suppress his statement to law enforcement.

According to law, a suspect who is in custody must be advised of his right to remain silent and of his right to the assistance of counsel prior to any interrogation. See Miranda v. Arizona, 384 U.S. 436 (1966).

According to the facts, upon finding a firearm on Davis' person, he was arrested. After arrest, Officer Drummond read Davis his Miranda warnings. Davis immediately waived Miranda, and agreed to cooperate with police. Davis fails to cite a single case supporting his argument for suppression. Considering Davis' failure to clearly attack both his "custody" and "interrogation," he fails to sufficiently raise claim upon which relief may be granted.

---

to prove that the defendant believed that he was guilty. It may be weighed by you in this connection, together with all the other evidence.

However, flight may not always reflect feelings of guilt. Moreover, feelings of guilt, which are present in many innocent people, do not necessarily reflect actual guilt.

You are specifically cautioned that evidence of flight of a defendant may not be used by you as a substitute for proof of guilt. Flight does not create a presumption of guilt.

Whether or not evidence of flight does show that the defendant believed that he was guilty, and the significance, if any, to be given to the defendant's feelings on this matter are for you to determine.

For the reasons stated above, the defendant's motion to suppress evidence and statements should be DENIED.

Respectfully submitted this 23rd day of May, 2007.

        LEURA G. CANARY
        UNITED STATES ATTORNEY

        /s/ Verne H. Speirs
        VERNE H. SPEIRS
        Assistant United States Attorney
        1 Court Square, Suite 201
        Montgomery, Alabama 36104
        (334) 223-7280
        (334) 223-7135 Fax
        verne.speirs@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:07cr12-MEF |
| | ) | |
| GREGORY LEWIS DAVIS | ) | |

CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Donnie Wayne Bethel.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Verne H. Speirs
VERNE H. SPEIRS
Assistant United States Attorney
1 Court Square, Suite 201
Montgomery, Alabama 36104
(334) 223-7280
(334) 223-7135 Fax
verne.speirs@usdoj.gov